UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK R. FINNEGAN,<br><br>          Plaintiff,<br><br>     v.<br><br>JEFFERY CLARK, et al.,<br><br>          Defendants. | Case No. 8:18-cv-00330-SJO-KES<br><br>REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable S. James Otero, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## INTRODUCTION.

On March 19, 2018, Plaintiff Jack R. Finnegan ("Plaintiff") filed the operative First Amended Complaint (Dkt. 10 ["FAC"]) alleging claims arising out of Orange County Superior Court ("OCSC") proceedings in The City of Dana Point v. Jack Finnegan, No. 30-2014-00746296-CU-PT-CJC (the "State

1   Lawsuit").  This is Plaintiff's third federal action related to the State Lawsuit.

2   See Finnegan v. Muñoz, et al., No. 15-cv-0420-DSF (RNB) (C.D. Cal.)

3   ("Finnegan I") and Finnegan v. Dana Point, No. 17-cv-976-DSF (DFMx) (C.D.

4   Cal.) ("Finnegan II") (both denying Plaintiff's claims based on the Rooker-

5   Feldman doctrine).[1]  Orders in the 2015 federal case detail relevant factual

6   background.  See Finnegan I, Dkts. 26, 28.  In general, the City of Dana Point

7   ("City") initiated a nuisance abatement action against Plaintiff over improperly

8   constructed retaining walls at Plaintiff's real property located at 25146

9   Manzanita Drive (the "Dana Point Property").  The State Lawsuit resulted in

10  (1) a monetary award to the City and (2) the appointment of a receiver to

11  rehabilitate and sell the Dana Point Property.  See Dkt. 13-1 (December 1,

12  2014, OCSC order by Hon. Franz E. Miller appointing receiver); Dkt. 13-2

13  (September 23, 2016, OCSC order by Hon. Robert J. Moss confirming

14  receiver's sale of the Dana Point Property); Dkt. 13-3 (March 30, 2017, order

15  by Judge Moss directing Plaintiff to pay the City $89,473.50).[2]

16          This lawsuit alleges claims against six defendants:

17          (1) Mark S. Adams, a lawyer and the court-appointed receiver;

18          (2) California  Receivership  Group,  PBC  ("CRG"),  the  public

19          benefit corporation formed by Defendant Adams to carry out his

20  _____

21          [1]  The Ninth Circuit affirmed the dismissal of Finnegan I.  Finnegan v.
    Muñoz, 698 F. App'x 526 (9th Cir. 2017).  Plaintiff's appeal from the district
22  court's judgment dismissing Finnegan II is pending in Ninth Circuit Case No.
    17-56200.

23

24          [2]  Defendants request that the Court take judicial notice of relevant state
    court records. (Dkt. 13.)  Defendants' request is GRANTED.  See Harris v.
25  Cnty. of Orange, 682 F.3d 1126, 1131-32 (9th Cir. 2012).  Because Defendants
    argue that the Court lacks subject matter jurisdiction under the Rooker-
26  Feldman doctrine, the Court may refer to state court filings even if not
    mentioned by the parties to satisfy itself of its own jurisdiction.  See Couch v.
27  Telescope Inc., 611 F.3d 629, 632 (9th Cir. 2010).

28

                                     2

1    receivership duties;

2        (3) Jeffery A. Clark, counsel for the receiver;

3        (4) Sara B. Spaeth, also counsel for the receiver;

4        (5) Timothy J. Stafford, an OCSC judge; and

5        (6) Debby Lamm (erroneously named as "Debby Mamm"), Judge

6        Stafford's court clerk.

7    (See Dkt. 10 at 1, 10, 15; Dkt. 12 at 4; Dkt. 16 at 3.)

8        The FAC's caption lists the following eleven causes of action: (1) 42

9    U.S.C. § 1983; (2) 42 U.S.C. § 1985; (3) seizure of property in violation of the

10   Fourth Amendment; (4) conversion; (5) slander of title; (6) fraud under 18

11   U.S.C. § 1028; (7) slander of professional reputation; (8) extortion, (9) "Tort

12   Abuse of Process;" (10) "Abuse of Authority;" and (11) "Obstruction of

13   Justice."  (Dkt. 10 at 1.)  Plaintiff peppers the FAC with allegations that the

14   Defendants violated various state laws, and also alleges violation of the Fair

15   Debt Collection Practices Act ("FDCPA") at "15 U.S.C. §§ 1692b to 1692p."

16   (Dkt. 10 at 13.)

17        Defendants Stafford and Lamm (the "Judicial Defendants") moved to

18   dismiss the FAC on various grounds, including lack of jurisdiction under the

19   Rooker-Feldman doctrine and immunities.  (Dkt. 16.)  Defendants Adams and

20   CRG (the "Receivership Defendants") and Defendants Clark and Spaeth (the

21   "Lawyer Defendants") moved to dismiss on similar grounds.  (Dkt. 12.)

22        On April 19, 2018, Plaintiff filed an opposition.  (Dkt. 20.)  Defendants

23   filed replies.  (Dkts. 21, 22.)  For the reasons explained below, the FAC should

24   be dismissed without leave to amend.

25   / / /

26   / / /

27   / / /

28   / / /

## II.

## SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS.

### A.    Judicially Noticeable Facts.

In the State Lawsuit, Defendant Adams was appointed as a receiver over the Dana Point Property pursuant to an order entered by OCSC Judge Miller on December 1, 2014 (the "Appointing Order").  (Dkt. 13-1.)  Judge Miller also entered an order on September 23, 2016, which authorized and confirmed the Receiver's sale of the Dana Point Property.  (Dkt. 13-2.)

The OCSC further entered an order on March 30, 2017, on a Motion for Discharge and Exoneration of Surety, which states that "Mark Adams ('Receiver') is to pay … outstanding receivership fees and costs owed to [CRG]."  (Dkt. 13-3.)  It also provides that Plaintiff must pay $89,473.50 to the City of Dana Point (the "Payment Order").  (Id.)  Subsequent to that order, it appears from the State Lawsuit docket that Defendant Adams and his attorneys have taken steps to collect payment from Plaintiff.

Plaintiff appealed the Appointing Order, which was affirmed in its entirety.  (Dkt. 13-4.)  He then petitioned for review to the California Supreme Court, which denied review.  (Dkt. 13-5.)

Plaintiff also appealed the Payment Order; that appeal is pending. (Dkt. 13-6 [Respondent's March 5, 2018, Brief filed in California Court of Appeal Case No. G055124].)  Per the Court of Appeal's online records, on April 4, 2018, the appeal was stayed due to the filing of a bankruptcy petition in In re Finnegan, Case No. 8:18-bk-10762-TA (C.D. Cal.) ("In re Finnegan"). Bankruptcy court records show that Plaintiff filed a pro se Chapter 11 bankruptcy petition on March 6, 2018.

### B.    Plaintiff's Allegations Against the Judicial Defendants.

Plaintiff alleges that Judge Stafford conducted a hearing on February 8, 2018.  (Dkt. 10 at 4.)  The subject matter of that hearing is unclear.  In the

4

FAC, Plaintiff references a motion for a preliminary injunction to enjoin a levy against his Chase bank account[3] per an earlier Writ of Execution, and a motion to quash or modify a subpoena. (Id. at 11, 17.)  In opposing the motions to dismiss, Plaintiff focuses on a contempt hearing held on April 12, 2018. (Dkt. 20 at 2.)  It appears from the State Lawsuit's online docket that the April 2018 hearing was preceded by Judge Stafford issuing a contempt order to show cause on February 8, 2018.

At the February 8 hearing, Plaintiff told Judge Stafford that he lacked jurisdiction because the case was on appeal, but Judge Stafford conducted the hearing anyhow.[4] (Id. at 4, 17.)  Plaintiff alleges that Judge Stafford "made an unlawful order regarding the illegal asserted claim of property valued at more than $89,473.50, without a trial, of any kind." (Id. at 5.)  Plaintiff further alleges that Judge Stafford refused "to follow statutory and decisional law during the less than five-minute hearing." (Id. at 6 (emphasis omitted).)  According to Plaintiff, the OCSC "wrongly decided the issues before it." (Id.

---

[3]  Per records filed in Plaintiff's bankruptcy action, on September 27, 2017, Plaintiff sued Chase in OCSC Case No. 30-2017-00946251.  See In re Finnegan, Dkt. 56-1 at 13-26 (complaint assigned to OCSC Judge Griffin).  The allegations concern Plaintiff's mortgage on real property in San Clemente rather than a levy. (Id.)  Based on the state court's docket, judgment of dismissal was entered on March 19, 2018.  A separate action filed by Plaintiff against Chase was removed to this Court and dismissed at the pleading stage.  See Finnegan v. Chase, et al., Case No. 8:17-cv-01129-AG (JDEx) (C.D. Cal.), Dkt. 20.  Plaintiff's appeal to the Ninth Circuit remains pending.  Finnegan v. JP Morgan Chase Bank N.A., 17-56404.  Plaintiff has also pursued federal litigation against Citi Bank concerning his retirement accounts.  See Finnegan v. Citi, et al., Case No. 8:14-cv-01770-CJC (DFMx) (C.D. Cal.); Finnegan v. Citi, et al., Case No. 8:17-cv-01995-CJC (DFMx) (C.D. Cal.).

[4]  Plaintiff may have been referring to his appeal from the March 2017 Payment Order which was pending in February 2018, California Court of Appeal Case No. G055124.  Plaintiff provided a list of pending appellate matters.  See Dkt. 20 at 14.

at 21.)  Finally, Plaintiff alleges that Judge Stafford violated the California Constitution by "setting a date for a hearing for contempt."  (Id. at 18.)

In his Opposition, Plaintiff alleges that Judge Stafford conducted an "unjustified contempt hearing" on April 12, 2018, and ordered another appearance on June 26, 2018.  (Dkt. 20 at 2.)  Plaintiff alleges that these proceedings violated the automatic stay created by his bankruptcy filing under 11 U.S.C. § 362(a).  (Id.)

In the FAC, Plaintiff alleges that Defendant Lamm failed to deliver to Judge Stafford a document Plaintiff had filed with the Clerk of the OCSC.  (Dkt. 10 at 16, 27.)  Plaintiff alleges that Defendant Lamm violated various California Rules of Court and inapplicable Federal Rules of Civil Procedure.  (Id. at 16.)

Plaintiff alleges that the Judicial Defendants "conspired to make misrepresentation[s] and carried out other actions indicative of violations of California Rules of Court Rules governing judges and court clerk conduct."  (Id. at 22.)  Plaintiff further asserts that the Judicial Defendants "ignored or failed in [their] obligations to research the law and determine that the claims of the action were without merit."  (Id.)  The conspiracy allegedly occurred "in Santa Monica, Los Angeles and Department C66, of Superior Court."[5]  (Id. at 23.)

## C.   Plaintiff's Allegations Against the Receivership and Lawyer Defendants.

Plaintiff alleges that on November 3, 2017, acting under a Writ of Execution, the Receivership and Lawyer Defendants "caused an illegal levy on

---

[5]  The Court takes judicial notice of online OCSC records that identify Timothy J. Stafford as an OSCS judicial officer assigned to Department C66.  See https://www.occourts.org/directory/judicial-officers/judicial-officers.html.

6

1  Plaintiff's former Citi Bank Account," even though the account was

2  purportedly exempt from execution under California law.  (Dkt. 10 at 10-11.)

3  Plaintiff further asserts that on November 27, 2017, the Receivership and

4  Lawyer Defendants "filed an illegal Opposition to Plaintiff's Claim of

5  Exemption."  (Id. at 13.)

6          On December 12, 2017, Plaintiff alleges that the Receivership and

7  Lawyer Defendants took some action (not described) that violated fair debt

8  collection practices.  (Id.)  On January 8, 2018, the Receivership and Lawyer

9  Defendants allegedly wrongly levied "an account at Bank of America on

10  [Plaintiff's] deceased wife of 18 years."  (Id.)  Plaintiff alleges that the

11  Receivership and Lawyer Defendants wrongfully obtained a lis pendens and

12  lien on real property he owns in San Clemente without giving him the required

13  notice.  (Id. at 2.)

14                              **III.**

15                  **JURISDICTIONAL ISSUES.**

16          Defendants argue that to the extent Plaintiff is challenging the validity of

17  judgments or orders entered by the OCSC, the Rooker-Feldman Doctrine

18  deprives this Court of jurisdiction.  (Dkt. 12 at 10; Dkt. 16 at 7-8.)[6]  Plaintiff

19  counters that "There is no application of the Rooker-Feldman doctrine in this

20  case [because Judge] Stafford made no appealable order or judgment and there

21  was no trial based on the merits."  (Dkt. 20 at 4 (underscore added).)

22  / / /

23  _____

24          [6]  The Court notes that Plaintiff's ongoing bankruptcy case does not
require a stay of this action, because Plaintiff seeks to prosecute his own
25  claims in this action.  In re Palmdale Hills Prop., LLC, 654 F.3d 868, 875 (9th
Cir. 2011) (citing In re Merrick, 175 B.R. 333, 337-38 (B.A.P. 9th Cir. 1994))
26  ("The stay does not prevent a plaintiff/debtor from continuing to prosecute its
own claims nor does it prevent a defendant from protecting its interests against
27  claims brought by the debtor.").

28

A.    **The Rooker-Feldman Doctrine.**

The <u>Rooker-Feldman</u> doctrine, derived from two United States Supreme Court opinions, provides that federal district courts may exercise only original jurisdiction; they may not exercise appellate jurisdiction over state court decisions.  <u>See</u> <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 482-86 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 415-16 (1923); <u>Bennett v. Yoshina</u>, 140 F.3d 1218, 1223 (9th Cir. 1998) (as amended).

The doctrine precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005).  Under <u>Rooker-Feldman</u>, the district court lacks subject matter jurisdiction over lawsuits that are <u>de facto</u> appeals of state court judgments.  <u>Bell v. City of Boise</u>, 709 F.3d 890, 897 (9th Cir. 2013).  "A de facto appeal exists when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." <u>Id.</u> (internal quotation marks omitted).

If a federal plaintiff's claims are, in part, a <u>de facto</u> appeal, then <u>Rooker-Feldman</u> also bars any additional claims inextricably intertwined with an issue resolved by the state court decision from which the forbidden <u>de facto</u> appeal is taken.  <u>See</u> <u>Cooper v. Ramos</u>, 704 F.3d 772, 779 (9th Cir. 2012); <u>see also</u> <u>Reusser v. Wachovia Bank, N.A.</u>, 525 F.3d 855, 859 (9th Cir. 2008) (claims in federal action are "inextricably intertwined" with state court decision where adjudication of federal claims would undercut state ruling or require district court to interpret application of state laws or procedural rules).  A claim is inextricably intertwined if "the relief requested in the federal action would effectively reverse the state court decision or void its ruling." <u>See</u> <u>Fontana Empire Ctr., LLC v. City of Fontana</u>, 307 F.3d 987, 992 (9th Cir. 2002)

8

1   (citation omitted).

2        The Court is mindful that the Supreme Court has been sparing in its

3   invocation of the <u>Rooker-Feldman</u> doctrine.  <u>See</u> <u>Exxon</u>, 544 U.S. at 284;

4   <u>Skinner v. Switzer</u>, 562 U.S. 521, 531 (2011) (doctrine has been applied by the

5   Supreme Court only twice).  Thus, for example, "[i]f a federal plaintiff

6   presents an independent claim, it is not an impediment to the exercise of

7   federal jurisdiction that the same or a related question was earlier aired

8   between the parties in state court."  <u>See</u> <u>Skinner</u>, 562 U.S. at 532 (citation and

9   internal punctuation omitted).  Nor would <u>Rooker-Feldman</u> bar a federal

10  challenge to "the validity of [a] rule rather than a challenge to an application of

11  the rule" in the prior state-court proceeding.  <u>See</u> <u>Noel v. Hall</u>, 341 F.3d 1148,

12  1157 (9th Cir. 2003) (citing <u>Feldman</u>, 460 U.S. at 487).

13       **B.    <u>Claims Against the Judicial Defendants.</u>**

14       As noted above, it is unclear from the FAC what precisely transpired at

15  Judge Stafford's February 8, 2018, hearing, but Plaintiff alleges that Judge

16  Stafford issued an "unlawful order" by "refusing to follow" the law.  (Dkt. 10

17  at 5-6.)  Plaintiff seeks compensatory and punitive damages from Judge

18  Stafford for entering an order that was allegedly in excess of his authority

19  and/or erroneous.  (<u>Id.</u> at 38.)  Plaintiff seeks the same damages from

20  Defendant Lamm for her role in assisting Judge Stafford.  (<u>Id.</u>)

21       These allegations are a <u>de facto</u> appeal of whatever order(s) Judge

22  Stafford issued at the February 8, 2018, hearing.  Insofar as Plaintiff challenges

23  Judge Stafford's substantive legal holdings, this Court may not exercise review

24  of those decisions.  <u>See</u> <u>Cooper</u>, 704 F.3d at 779 (claim barred where relief

25  requested in federal action would reverse or void state court ruling).  To the

26  extent that Plaintiff now seeks money damages against the Judicial Defendants

27  based on Judge Stafford's state court rulings, his claims are "inextricably

28  intertwined" with those same rulings.  <u>See</u> <u>id.</u> at 782 (federal claim was

9

1   inextricably intertwined even though plaintiff sought monetary and punitive

2   damages in federal court, as opposed to a declaratory judgment that he was

3   entitled to DNA testing in state court).  Nothing in the FAC suggests that

4   Plaintiff is attacking the constitutional validity of a state rule as opposed to its

5   application, such that Rooker-Feldman would be inapplicable.

6        Further, while Plaintiff argues that the Rooker-Feldman doctrine does

7   not apply because Judge Stafford did not enter a final judgment or conduct a

8   merits trial, that is wrong.  (See Dkt. 20 at 4.)  The rule applies not only to final

9   orders and judgments, but also to interlocutory orders and non-final judgments

10  issued by a state court.  Doe & Assocs. Law Offices v. Napolitano, 252 F.3d

11  1026, 1030 (9th Cir. 2001).  "Because district courts lack power to hear direct

12  appeals from state court decisions, they must decline jurisdiction whenever

13  they are 'in essence called upon to review the state court decision.'"  Id.

14  (quoting Feldman, 460 U.S. at 482 n.16); see also id. at 1030 (citing

15  Richardson v. D.C. Ct. of App., 83 F.3d 1513, 1515 (D.C. Cir. 1996)) ("We

16  cannot imagine how one could reconcile Feldman's reasoning, based as it is on

17  allowing state courts to arrive at decisions free from collateral federal attack,

18  with the idea that the district court would be free to review [the state court

19  decision] so long as the decision was interlocutory.").

20       **C.    Claims Against the Receivership and Lawyer Defendants.**

21       Plaintiff alleges that the Receivership and Lawyer Defendants acted

22  wrongfully when engaging in "debt collection activities," causing an "illegal

23  levy," filing an "illegal" opposition to a claim of exemption, and engaging in

24  "conspiracy."  (Dkt. at 10-11, 13, 22.)  The only plausible interpretation of

25  these vague allegations, given the materials subject to judicial notice, is that

26  Plaintiff alleges these Defendants acted unlawfully in complying with the

27  Appointing Order and enforcing the Payment Order (or subsequent

28  judgments).  Plaintiff thus ultimately premises his challenges on the assertion

1  that the state court erred in issuing those orders.  To grant Plaintiff redress

2  would require undoing the prior state orders and judgment, rendering

3  Plaintiff's claims "inextricably intertwined" with issues resolved by the state

4  court's decisions.  The claims against the Receivership and Lawyer Defendants

5  are therefore also barred as <u>de facto</u> appeals.  <u>See</u> <u>Finnegan II</u>, Dkt. 43 at 4

6  ("While his Complaint includes a list of new claims and also seeks damages,

7  each is predicated on the premise that the state court erred when it granted the

8  City's petition for a receiver, appointed a receiver, and subsequently authorized

9  the receiver to take certain action, including selling the property at issue.").

10                                             **IV.**

11                         **OTHER PLEADING DEFECTS.**

12         Even if the Court had jurisdiction over Plaintiff's claims (which it does

13  not, for the reasons explained above), the Court would dismiss all of them

14  without leave to amend due to other fatal pleading defects.

15  **A.**   <u>**Judicial Immunity Bars All Claims Against the Judicial**</u>

16          <u>**Defendants.**</u>

17          **1.**   **The Doctrine of Judicial Immunity.**

18         Judicial officers are absolutely immune from civil suits arising out of the

19  exercise of their judicial functions.  <u>Mireles v. Waco</u>, 502 U.S. 9, 11 (1991).

20  The rationale behind this long-established doctrine is that the "proper

21  administration of justice" requires "that a judicial officer, in exercising the

22  authority vested in him, shall be free to act upon his own convictions, without

23  apprehension of personal consequences to himself."  <u>Bradley v. Fisher</u>, 80 U.S.

24  335, 347 (1872).

25         "[T]he factors determining whether an act by a judge is a 'judicial' one

26  relate to the nature of the act itself, i.e., whether it is a function normally

27  performed by a judge, and to the expectations of the parties, i.e., whether they

28  dealt with the judge in his judicial capacity."  <u>Stump v. Sparkman</u>, 435 U.S.

349, 362 (1973).  A judge can act erroneously or even maliciously or corruptly without exposure to personal liability so long as the judge's acts are "judicial." Pierson v. Ray, 386 U.S. 547, 554 (1967).

A judge, however, is not immune for actions, "though judicial in nature, taken in the complete absence of all jurisdiction."  Mireles, 502 U.S. at 11-12 (citations omitted).  A clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction.  For example, "if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune."  Stump, 435 U.S. at 357 n.7; see also O'Neil v. City of Lake Oswego, 642 F.2d 367, 369 (9th Cir. 1981) (holding that a judge who convicted defendant for contempt, an act within the court's jurisdiction, but without the affidavit required by statute to confer jurisdiction over the offense charged, was still entitled to immunity; his act was merely in excess of his jurisdiction).

In Schucker v. Rockwood, 846 F.2d 1202 (9th Cir. 1988), Schucker sued a state court judge who had held him in contempt, arguing that "Judge Jourdane acted in the 'clear absence' of jurisdiction because a notice of appeal had been filed in the California Court of Appeal arising from the community property dispute and therefore Judge Jourdane lost his judicial immunity."  Id. at 1204.  The Ninth Circuit affirmed the district court's dismissal of Schucker's § 1983 action, reasoning as follows:

> At most, Schucker alleges that Judge Jourdane misinterpreted a
> statute and erroneously exercised jurisdiction and thereby acted
> in excess of his jurisdiction.  Even assuming Judge Jourdane's
> assumption of jurisdiction was "in excess of his jurisdiction," the

act was not done "in the clear absence of jurisdiction." <u>See</u>
<u>Stump</u>, 435 U.S. at 357 n. 7.  Accordingly, the district court
correctly dismissed Schucker's claim against Judge Jourdane.
<u>Id.</u>

Absolute quasi-judicial immunity also applies to court clerks, such as
Defendant Lamm, for administrative acts necessary to carry out judicial
functions.  <u>Curry v. Castillo</u>, 297 F.3d 940, 952 (9th Cir. 2002).  "[C]ourt
personnel are immune from administrative tasks if these tasks are 'judicial in
nature and an integral part of the judicial process.'"  <u>Id.</u> at 951; <u>Morrison v.</u>
<u>Jones</u>, 607 F.2d 1269, 1273 (9th Cir. 1979) (applying immunity to court clerk's
alleged failure to give notice); <u>Rodriguez v. Weprin</u>, 116 F.3d 62, 66 (2nd Cir
1997) (applying immunity to court clerk's alleged delays and calendar
mismanagement).

### 2.    Analysis.

Plaintiff's claims against Judge Stafford are based on Judge Stafford's
judicial acts, i.e., conducting a short hearing, wrongly deciding legal issues,
ruling against Plaintiff, and setting a date for a contempt hearing.  Likewise,
Plaintiff's claims against Defendant Lamm are premised on tasks she
undertook to assist Judge Stafford in performing his judicial functions, i.e.,
delivering (or not delivering) court filings to him and discussing the case with
him.  Both Judicial Defendants are entitled to immunity.

Plaintiff's allegations that Judge Stafford acted without jurisdiction do
not demonstrate that he acted in the complete absence of all jurisdiction.  As an
OCSC judge, Judge Stafford would have subject matter jurisdiction to address
a motion for preliminary injunction or motion to quash filed in the State
Lawsuit, as well as to hear contempt proceedings.  <u>See</u> <u>Dep't of Alcoholic</u>
<u>Beverage Control v. Locker</u>, 129 Cal. App. 3d 381, 390 (1982) (jurisdiction in
nuisance abatement action); <u>In re M.R.</u>, 220 Cal. App. 4th 49, 56 (2013) ("It is

1   well settled that the court has inherent power to enforce compliance with its

2   lawful orders through contempt.").  While there are California procedural rules

3   describing when an appeal deprives the trial court of jurisdiction (see Cal.

4   Code Civ. Pro. § 916) or when a prevailing party can enforce an order or

5   judgment being appealed (see id. §§ 916-923), at worst, Plaintiff alleges that

6   Judge Stafford misapplied these rules and acted beyond his authority.  Such

7   allegations do not abrogate judicial immunity.  Schucker, 846 F.2d at 1204.

8        **B**.      **The Other Defendants Are Entitled to Quasi-Judicial**

9              **Immunity.**

10             **1.     Plaintiff Failed to Seek OCSC Leave Pursuant to**

11                  **Burton.**

12       The Receivership and Lawyer Defendants cite Barton v. Barbour, 104

13   U.S. 126 (1881) for the proposition that Plaintiff must seek permission from

14   the OCSC before suing them in federal court.  (Dkt. 12 at 11.)  In Barton, the

15   United States Supreme Court held that a party must obtain leave from the

16   appointing court before suing a receiver.  Barton, 104 U.S. at 131.  While it is

17   not entirely clear if the Barton rule now applies outside of bankruptcy actions,

18   the Ninth Circuit has cited it at least once recently in another context.

19   Compare Med. Dev. Int'l v. Cal. Dep't of Corr. & Rehab., 585 F.3d 1211,

20   1217 (9th Cir. 2009) ("Our cases analyzing the interplay between the Barton

21   rule and § 959(a) have most often involved bankruptcy trustees, and 'the

22   policies underlying the Barton doctrine apply with greater force to bankruptcy

23   proceedings than to other proceedings involving receivers.'") with id. at 1219

24   (applying Barton in context of contract claim); Spitzer v. Aljoe, No. 13-cv-

25   05442, 2015 U.S. Dist. LEXIS 134247, at *8-13 (N.D. Cal. Oct. 1, 2015)

26   (analyzing law concerning application of Barton and applying doctrine to

27   § 1983 claim).  Plaintiff does not allege that he obtained the OCSC's

28   permission to sue the Receivership Defendants.  Accordingly, his failure to

14

1  comply with the requirements of <u>Barton</u> bars his claims against the

2  Receivership Defendants.

3         **2.    Court-Appointed Receivers are Entitled to Quasi-**

4               **Judicial Immunity.**

5         Moreover, even if <u>Barton</u> was limited to the bankruptcy context,

6  immunities applicable to receivers are fatal to Plaintiff's allegations.  "Under

7  federal law, court-appointed 'receivers are court officers who share the

8  immunity awarded to judges.'"  <u>Alta Gold Mining Co. v. Aero-Nautical</u>

9  <u>Leasing Corp.</u>, 656 F. App'x 316, 318 (9th Cir. 2016) (citing <u>New Alaska Dev.</u>

10 <u>Corp. v. Guetschow</u>, 869 F.2d 1298, 1303 (9th Cir. 1989)).  "Receivers are

11 thus entitled to absolute immunity unless their acts are clearly beyond their

12 jurisdiction or not judicial in nature."  <u>Id.</u>; <u>see also</u> <u>Castillo</u>, 297 F.3d 940

13 (bankruptcy trustee and her assistant enjoyed absolute quasi-judicial immunity

14 from liability arising out of scheduling and noticing a bankruptcy confirmation

15 hearing).  Absent such broad immunity, receivers would be "a lightning rod for

16 harassing litigation aimed at judicial orders."  <u>Kermit Const. v. Banco Credito</u>

17 <u>Y Ahorro Ponceno</u>, 547 F.2d 1, 3 (1st Cir. 1976).

18        In <u>New Alaska</u>, for example, the Ninth Circuit addressed claims against

19 a receiver appointed by an Alaskan judge in a divorce case to take over the

20 husband's business affairs.  <u>Id.</u> at 1299.  The Court of Appeals noted that

21 "absolute derivative judicial immunity" was appropriate for a "receiver

22 appointed by a state court to manage the business asserts of a marital estate

23 during a dissolution proceeding."  <u>Id.</u> at 1303.  In two aspects, however, the

24 receiver was not entitled to immunity:  (1) first, the plaintiffs alleged that the

25 received improperly retained assets long after the judge entered the final

26 divorce decree, and (2) second, the plaintiffs alleged that the receiver

27 misappropriated funds, slandered the husband, and refused to return assets.  <u>Id.</u>

28 at 1304.  The Ninth Circuit concluded that these acts were not normally

1    performed by a court-appointed receiver or connected to receivership duties,

2    and declined to hold the receiver absolutely immune from such allegations.  Id.

3    at 1304-05.

4          Here, the only wrongdoing alleged against the Receivership Defendants

5    involves acts consistent with carrying out receivership duties.  (See Dkt 10 at

6    10-11, 13, 22.)  Plaintiff does not allege any unusual wrongdoing (as in New

7    Alaska) that would be inconsistent with the state court's orders.  Plaintiff's

8    claims, therefore, are barred by immunity.

9          In an effort to avoid this result, Plaintiff cites 28 U.S.C. § 959 ("Section

10   959") for the proposition that he may sue a receiver for "actions taken after and

11   during [the] receiver's management and operations of the property."  (Dkt. 10

12   at 30.)  That statute provides in relevant part as follows:

13          Trustees, receivers or managers of any property, including debtors

14          in possession, may be sued, without leave of the court appointing

15          them, with respect to any of their acts or transactions in carrying

16          on business connected with such property.  Such actions shall be

17          subject to the general equity power of such court so far as the

18          same may be necessary to the ends of justice, but this shall not

19          deprive a litigant of his right to trial by jury.

20   28 U.S.C. § 959(a).

21         Section 959 was enacted in response to Barton, an 1881 case.  See Med.

22   Dev. Int'l, 585 F.3d at 1217; Diners Club, Inc. v. Bumb, 421 F.2d 396, 398-99

23   (9th Cir. 1970).  The dissenting justice in Barton wrote that he agreed with the

24   majority to the extent that its rule requiring approval of the appointing court

25   was limited to receivers' equitable appointment "to wind up a defunct

26   corporation," Barton, 104 U.S. at 138, but found the majority rule

27   "unsupported by authority and unsound in principle" when extended to a suit

28   in law (i.e., a personal injury action) that would not "interfere with the actual

1    possession of property which the receiver holds ….” Id. at 141.

2    Following Barton, Congress enacted Section 959 in 1887 to address the

3    concerns of the dissenting justice. See Diners Club, Inc., 421 F.2d at 399.

4    Early versions of the statute applied only to receivers "appointed by any court

5    of the United States." Freeman v. Cty. of Orange, No. 14-cv-107-JLS (ANx),

6    2014 U.S. Dist. LEXIS 199004, at *9 (C.D. Cal. May 29, 2014) (citing In re

7    Jefferson Cty., 484 B.R. 427, 458-59 (Bankr. N.D. Ala. 2012)). Although the

8    current version omits that language, courts have nonetheless determined that

9    the statute applies only to receivers appointed by federal courts, not state court

10   receivers. Id.; see also SEC v. Lincoln Thrift Assoc., 557 F.2d 1274, 1277 n.1

11   (9th Cir. 1977) (Section 959 is "federal statute granting leave to sue federal

12   receivers in some circumstances without leave of the appointing court …."

13   (emphasis added)). Accordingly, where Plaintiff seeks to sue a state court-

14   appointed receiver (and counsel), the exception is inapplicable.

15   Further, consistent with Section 959's history, the Ninth Circuit has

16   narrowly construed the statute as a "limited exception" that applies "only if the

17   trustee or other officer is actually operating the business, and only to 'acts or

18   transactions in conducting the debtor's business in the ordinary sense of the

19   words or in pursuing that business as an operating enterprise.'" In re Crown

20   Vantage, Inc., 421 F.3d 963, 971-72 (9th Cir. 2005) (citing Muratore v. Darr,

21   375 F.3d 140, 144 (1st Cir. 2004)). The Receivership Defendants were not

22   operating any business, but instead managing and liquidating Plaintiff's

23   personal real property. Under those circumstances, Section 959 does not

24   apply, and the Receivership Defendants are entitled to immunity.

### 3.    Counsel for Court-Appointed Receivers are Entitled to Quasi-Judicial Immunity.

27   Each of Plaintiff's claims against the Lawyer Defendants are premised

28   on action taken on behalf of the receiver. In the bankruptcy context, the Ninth

Circuit has held that "[t]he doctrine of judicial immunity also applies to court approved attorneys for the trustee." In re Harris, 590 F.3d 730, 742 (9th Cir. 2009) (citing Smallwood v. United States, 358 F.Supp. 398, 404 (E.D. Mo. 1973)); see also In re DeLorean Motor Co., 991 F.2d 1236, 1241 (6th Cir. 1993). There is no reason to conclude that a different standard should apply to attorneys representing a court-appointed receiver protected by immunity. The Appointing Order authorized the receiver to exercise the "full powers granted receivers under Code of Civil Procedure section 568 and Health and Safety Code section 17980.7(c)" (Dkt. 13-1 at 3), which includes the authority to "bring and defend actions …." Cal. Code Civ. Proc. § 568. The FAC does not plausibly allege that the Lawyer Defendants acted beyond the scope of the receiver's state court appointment. The Lawyer Defendants were bound by duties of the attorney-client relationship to assist the receiver in carrying out court-appointed functions. In that capacity, the derivative or quasi-judicial immunity applicable to the receiver also extends to the Lawyer Defendants.

### C.    **Plaintiff's Federal Claims Fail for Additional Reasons.**

Plaintiffs federal claims also suffer from other defects.

#### 1.    **42 U.S.C. § 1985.**

In response to the original complaint, the Court issued a minute order encouraging Plaintiff to seek assistance from a pro se clinic to amend his complaint and explaining that to state a claim under clause § 1985(3) for conspiracy to violate his civil rights, Plaintiff must allege that he is a member of a protected class and that the conspirators were motivated by animus against him for that reason. (Dkt. 9 at 3.)

The FAC now alleges, "42 USC § 1985, forbids conspiracies to interfere with civil rights by depriving persons of rights or privileges." (Dkt. 10 at 24.) The FAC further alleges that "42 USC § 1985(3) is a valid exercise of congressional power …." (Id.) In support of this claim, Plaintiff asserts that

18

1  he "is a member of a protected class and that the conspirators were motivated
2  by animus against him for that reason."  (Id. at 15.)

3       By parroting the Court's earlier minute order and alleging legal
4  conclusions rather than facts, Plaintiff fails to state a claim.  Ashcroft v. Iqbal,
5  556 U.S. 662, 678 (2009) (citation omitted) ("Threadbare recitals of the
6  elements of a cause of action, supported by mere conclusory statements, do not
7  suffice.").

8                    **2.    Fraud Under 18 U.S.C. § 1028.**

9       18 U.S.C. § 1028 is a federal statute that criminalizes producing,
10 possessing, or selling false identification documents.  The FAC does not allege
11 that any Defendant produced, possessed, or sold false identification
12 documents.  Even if it did, § 1028 is a criminal statute that does not support a
13 private cause of action.  Szanto v. Persolve, LLC, No. 15-cv-0241-AG
14 (DFMx), 2015 U.S. Dist. LEXIS 165883, at *7 (C.D. Cal. Dec. 2, 2015)
15 ("Courts have repeatedly held that there is no private right of action under
16 Section 1028.") (collecting authority).

17                    **3.    Abuse of Authority.**

18      The Court will favorably construe the FAC's allegations concerning
19 "abuse of authority" to assert a claim for violation of substantive due process.

20      The Fourteenth Amendment's substantive due process clause protects
21 against the arbitrary or oppressive exercise of government power.  See County
22 of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998).  "[T]he Due Process
23 Clause is violated by executive action only when it can be properly
24 characterized as arbitrary, or conscience shocking, in a constitutional sense."
25 Lewis, 523 U.S. at 847 (internal quotations omitted); see Lemire v. Cal. Dep't
26 of Corr. & Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013).  The cognizable level
27 of executive abuse of power is that which "shocks the conscience" or "violates
28 the decencies of civilized conduct."  Lewis, 523 U.S. at 846.

1   There is no private right of action under the Fourteenth Amendment;
2   constitutional claims for damages must be asserted under 42 U.S.C. § 1983.
3   <u>Azul-Pacifico, Inc. v. City of Los Angeles</u>, 973 F.2d 704, 705 (9th Cir. 2002)
4   ("[A] litigant complaining of a violation of a constitutional right must utilize
5   42 U.S.C. § 1983.") (internal citations omitted).  Even if Plaintiff had asserted
6   a Fourteenth Amendment claim under 42 U.S.C. § 1983, the FAC does not
7   allege conduct that "violates the decencies of civilized conduct."  Instead, the
8   FAC attempts to assert claims based on (1) court orders relating to the Judicial
9   Defendants, and (2) the Receivership and Lawyer Defendants' efforts to
10   comply with the Appointing Order and enforce the Payment Order.

11          **4.     FDCPA.**

12          To plead a claim under the FDCPA, Plaintiff must allege that a
13   defendant was a "debt collector" as defined by the act, that the defendant's
14   challenged conduct constituted "debt collection," and that the debt collection
15   actions violated a provision of the act.  <u>See</u> <u>Heintz v. Jenkins</u>, 514 U.S. 291,
16   294 (1995).

17          The FDCPA defines a "debt" as "any obligation or alleged obligation of
18   a consumer to pay money arising out of a transaction in which the money,
19   property, insurance, or services which are the subject of the transaction are
20   primarily for personal, family, or household purposes, whether or not such
21   obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).

22          Plaintiff's obligation under the Payment Order, i.e., to pay the City fees
23   and costs arising out of his unsuccessful defense of a code
24   enforcement/nuisance abatement action, does not fit within the FDCPA's
25   definition of consumer "debt."  Defendants' efforts to collect on the Payment
26   Order therefore fall outside the scope of the FDCPA.
27   / / /
28   / / /

20

**D**.      **The Court Declines to Exercise Jurisdiction Over Plaintiff's State Law Claims.**

Plaintiff's claims for conversion, slander of title and professional reputation, fraud, extortion, and obstruction of justice all sound in state law. Where Plaintiff fails to state a federal claim for relief, the Court declines to exercise jurisdiction over these claims.  28 U.S.C. § 1367(c).

**E.      Further Leave to Amend Would be Futile.**

A pro se litigant must be given leave to amend his complaint unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).  If it is absolutely clear that the complaint suffers from pleading deficiencies that cannot be cured by amendment, then dismissal without leave to amend is appropriate.  See, e.g., Chaset v. Fleer/Skybox Int'l, 300 F.3d 1083, 1088 (9th Cir. 2002) (no need to prolong the litigation by permitting further amendment where the "basic flaw" in the underlying facts as alleged cannot be cured by amendment); Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1039 (9th Cir. 2002) ("Because any amendment would be futile, there was no need to prolong the litigation by permitting further amendment."); Klamath-Lake Pharmaceutical Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir.) ("futile amendments should not be permitted").

Here, since Plaintiff's claims are barred by the Rooker-Feldman doctrine, or in the alternative by applicable immunities, the Court finds that the pleading defects discussed above are incapable of being cured by amendment. Plaintiff fails to allege any facts indicating he had interactions with the Judicial Defendants outside of a judicial setting.  Further, Plaintiff cannot plausibly assert that his claims against the Receivership or Lawyer Defendants arise from conduct other than their carrying out their appointed duties.

21

1  **V.**

2  **RECOMMENDATION**

3      IT IS THEREFORE RECOMMENDED that the District Court issue an

4  Order: (1) approving and accepting this Report and Recommendation; and

5  (2) directing that Judgment be entered dismissing Plaintiff's federal claims

6  with prejudice and his state claims without prejudice.

7

8  DATED:  <u>May 22, 2018</u>

9                             _____

10                           KAREN E. SCOTT

11                           United States Magistrate Judge

12

13  **<u>NOTICE</u>**

14      Reports and Recommendations are not appealable to the Court of

15  Appeals, but are subject to the right of any party to timely file Objections as

16  provided in the Federal Rules of Civil Procedure and the instructions attached

17  to this Report. This Report and any Objections will be reviewed by the District

18  Judge whose initials appear in the case docket number.

19

20

21

22

23

24

25

26

27

28